982 So.2d 1027 (2008)
John Paul WALLACE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-CP-00766-COA.
Court of Appeals of Mississippi.
May 27, 2008.
*1028 John Paul Wallace, appellant, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. John Paul Wallace pled guilty to two counts of exploitation of a child. The Harrison County Circuit Court sentenced Wallace to two concurrent ten-year sentences with ten years suspended and five years probation. Wallace tested positive for marijuana, but the circuit court did not revoke Wallace's probation. After Wallace tested positive for marijuana again, the circuit court revoked Wallace's probation and reinstated Wallace's two previously-suspended concurrent ten-year sentences.
¶ 2. Wallace filed a petition for post-conviction collateral relief and claimed he had ineffective assistance of counsel at his probation revocation hearing. The circuit court ordered the State to respond to Wallace's petition, and the State argued that Wallace's petition had no merit. The circuit court agreed and denied Wallace's petition. Aggrieved, Wallace appeals and argues that he had ineffective assistance of counsel at his probation revocation hearing. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 3. In October 1998, the Harrison County grand jury returned an indictment against Wallace and charged him with four counts of child exploitation involving receipt of "visual depictions of children under the age of eighteen years engaging in sexually explicit conduct" pursuant to Mississippi Code Annotated section 97-5-33(3) *1029 (Rev.1995). On February 25, 2002, Wallace pled guilty to two counts of child exploitation. The circuit court sentenced Wallace to two concurrent ten-year sentences with ten years suspended and five years probation.
¶ 4. On March 6, 2002, Wallace reported to his probation officer, Jimmy Shows. Shows gave Wallace a drug test. Wallace's urine tested positive for marijuana, and Shows filed a petition to revoke Wallace's probation. On April 8, 2002, the circuit court conducted Wallace's first probation revocation hearing. Wallace claimed his urine tested positive for marijuana because he had smoked marijuana just before he was sentenced on February 25, 2002. He admitted that he lied when he told the circuit court he was not under the influence of drugs during his guilty plea and sentencing hearing. The circuit court decided not to revoke Wallace's probation. The circuit court fined Wallace $500 and warned him not to let it happen again.
¶ 5. On May 1, 2002, less than one month after the first probation revocation hearing, Wallace tested positive for marijuana for the second time. Shows again filed a petition to revoke Wallace's probation. Wallace retained attorney Kelly McKoin.
¶ 6. On June 10, 2002, McKoin filed a motion to have Wallace's second urine sample analyzed by an independent laboratory of Wallace's choice. McKoin also requested that Wallace undergo a third drug test. The circuit court granted Wallace's motions and held all matters in abeyance until the test results were available.
¶ 7. Ten days later, Wallace produced the third urine sample. Wallace's second and third urine samples were sent to Dynacare Laboratories in Montgomery, Alabama. According to Dynacare, Wallace's second urine sample was positive for marijuana, though his third urine sample was negative for marijuana.
¶ 8. On June 28, 2002, the circuit court conducted a second probation revocation hearing. Wallace's petition for post-conviction relief and this appeal stem from McKoin's representation during the second probation revocation hearing.
¶ 9. To summarize Wallace's position during that hearing, Wallace submitted that he had marijuana in his system simply because it had yet to work its way out of his system. Wallace claimed he last smoked marijuana before he was sentenced on February 25, 2002. Wallace further claimed that, prior to that time, he smoked a relatively large amount of marijuana on a daily basis. According to Wallace, his second positive drug test was the result of the manner in which the second urine sample was tested.
¶ 10. Testimony during the probation revocation hearing set forth that Wallace's first and second urine tests were conducted by way of the "Enzyme-Multiplied Immunoassay Technique (EMIT)." The EMIT method does not return a result that indicates a specific level of the active chemical in marijuana-tetrahydrocannabinol (THC). Instead, the EMIT test returns a positive or negative result based on specific "flag" levels of THC. That is, if one has a certain level of THC in one's system that is above the flag level, the result of the EMIT returns a positive result. The EMIT test does not, however, detail exactly how much THC one has in his or her system.
¶ 11. Dynacare, however, tested Wallace's second and third urine samples by gas chromatography mass spectrometer (GCMS). The GCMS test returned a specific result that indicated exactly how many nanograms of THC were in Wallace's system. According to Wallace, if he had been tested by GCMS, it would have *1030 been clear that his THC levels were decreasing and that the marijuana in his system-due to his previous heavy use  was still making its way out of his system.
¶ 12. Harold Stanley, a "drug assay technician" employed by the Mississippi Department of Corrections, testified as the State's expert on drug testing. Stanley's testimony cast doubt on Wallace's explanation for the continued presence of marijuana in his system. Stanley testified that THC remained in one's system on average for twenty-one days, "depending on metabolism, body weight, fat content, things like that." Stanley later repeated, "a heavy smoker, five joints a day, quits today, 21 days later it should be down at zero levels or below cutoff based on the individual's exercise, body fat, and metabolism." Stanley also testified that marijuana would be out of a heavy smoker's system between twenty-one and thirty days.
¶ 13. Wallace testified that he smoked an ounce of marijuana a day until the date he was sentenced. On cross-examination, the State elicited testimony that suggested Wallace avoided being drug tested after his first probation revocation hearing on April 8, 2002. Wallace admitted that after his first probation revocation hearing, he was released from custody and ordered to report directly to Shows. Wallace further admitted that he did not report to Shows until May 1, 2002.
¶ 14. Wallace had an explanation for his failure to report as ordered. According to Wallace, he tried to contact Shows on April 8, 2002. Wallace claimed Shows was not in his office. Wallace further explained that he consistently tried to contact Shows, but he could not successfully contact him. According to Wallace, "[Shows] was not in his office. I called once a day to his office and he was never in his office. I went by there once, and the little assistant said he was out."
¶ 15. The State also cross-examined Wallace regarding an appointment with Shows that took place on June 3, 2002. The State asked Wallace whether he refused to take a drug test on that date. Wallace denied that he refused to take a drug test. According to Wallace, "[he] told [Shows] [he] would take another urine test on June 3rd, but [Shows] would not give [him] one."
¶ 16. Shows disputed much of Wallace's testimony. Shows testified that Wallace did not tell him that he was a heavy smoker. According to Shows, Wallace told him he smoked marijuana once a week. Shows further testified that between April 8, 2002, and May 1, 2002, he did not receive any telephone messages from Wallace, and he received no notices from his secretary that Wallace came to see him. Finally, Shows testified that he offered Wallace a drug test on June 3, 2002. Shows clarified that Wallace did not refuse the drug test-Wallace told him he could not produce a urine sample at that time.
¶ 17. After each side presented evidence, Wallace's attorney stated:
Our lab man is unable to be here due to their policy, although we called him and thought that he might be able to make it. But we find out later on that he couldn't come to testify about the results that he found, or the results of the test. But outside of that, we'd like to argue that it would not be necessary for him to be here under our order.
The circuit court then allowed Wallace to have the Dynacare lab results marked for identification. After argument from Wallace's attorney and the State, the circuit court revoked Wallace's probation and ordered him to serve his two previously-suspended concurrent ten-year sentences, day for day.
*1031 ¶ 18. On February 21, 2006, Wallace filed a document titled "motion for post-conviction relief to vacate and set aside conviction and sentence." Wallace claimed McKoin was constitutionally ineffective counsel during the second probation revocation hearing. According to Wallace, McKoin was ineffective in that: (1) he did not call an expert witness who would have testified that the levels of marijuana in his system indicated he had not smoked marijuana for some time; (2) he did not object to the admissibility of the urine sample based on the chain of custody; (3) during the cross-examination of Stanley, he elicited harmful evidence regarding the amount of time marijuana stays in one's system; and (4) he did not file a timely motion for reconsideration. After the circuit court ordered the State to respond, the circuit court declined to grant Wallace any relief. Wallace appeals.

ANALYSIS
¶ 19. On appeal, Wallace raises the same allegations of ineffective assistance of counsel as he did before the circuit court. Our familiar standard of review regarding allegations of ineffective assistance of counsel detailed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) involves a two-prong analysis. Connell v. State, 691 So.2d 1004, 1007 (Miss.1997). First, it is necessary to determine whether Wallace demonstrated that McKoin's performance was deficient. Id.
¶ 20. Wallace claims McKoin's performance was deficient in that McKoin failed to call an expert witness who would have testified that the levels of marijuana in Wallace's system indicated Wallace had not smoked marijuana for some time. As an exhibit to his petition for post-conviction relief, Wallace attached a document from Robert Conley, purportedly of the "Impaired Driving Consultant Group" in Nashville, Tennessee. Conley's credentials were not included with that exhibit. In any event, Conley's report stated:
A body fat test conducted on Mr. Wallace by Susan Cooper, RN showed his Body Mass Index (BMI) to be 37 and his weight to be 266 pounds. Both of these figures indicate that Mr. Wallace has a substantially above average fat content in his body which certainly would increase the amount of time necessary for his body to purge itself of all THCCOOH.
While the 64 day time period is on the outside edge of the envelope for a positive test reading there does indeed remain a definite possibility that Mr. Wallace's testimony was truthful in regard to his marijuana usage. Mr. Wallace's credibility is further boosted by the fact that a follow-up test given to him by MDOC in June 2002 showed a negative result.
¶ 21. Assuming that failure to produce an expert witness was a deficiency on McKoin's behalf, the second prong of Strickland requires that this Court must then consider whether that deficiency caused Wallace prejudice during his probation revocation hearing. Connell, 691 So.2d at 1007. Even assuming that McKoin's failure to produce an expert witness was a deficient performance, which we do not expressly find or fail to find, we find that the failure to produce Conley, or someone to testify similar to Conley, did not cause Wallace prejudice during his probation revocation hearing.
¶ 22. Even when viewed in the light most favorable to Wallace, Conley's report proves that it was possible that Wallace last smoked marijuana on February 25, 2002, and Wallace still had sufficient remnants of THC in his system to result in a positive test on May 1, 2002. As a result, *1032 the circuit court's decision required weighing Wallace's credibility. Wallace's credibility was severely diminished because: (1) he admitted that he lied to the circuit court during his initial sentencing; (2) according to Shows, Wallace initially told him he smoked marijuana once a week, but later testified that he smoked an ounce of marijuana a day until the day he was sentenced; (3) Wallace was ordered to report to Shows on April 8, 2002, but he did not report until May 1, 2002; (4) Wallace testified that he could not contact Shows, despite having called once a day and visited Shows's office, but Shows testified that he received no notice of any such calls or visits; and (5) Wallace was offered a drug test on June 3, 2002, but responded that he could not produce a urine sample.
¶ 23. Wallace bears the burden of proving both prongs of Strickland. Connell, 691 So.2d at 1007. Even if we assume for the sake of discussion only that Wallace proved the first Strickland prong, he still bears the burden of proving that, but for his attorney's unprofessional errors, there is a reasonable probability that the result of his probation revocation hearing would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Wallace can only demonstrate a potential question of weight and credibility. His own credibility was severely diminished by other evidence. Wallace has not demonstrated a sufficient probability that the outcome would have been different had McKoin called an expert witness. Stanley testified that a heavy smoker who stopped using marijuana would not test positive after twenty-one to thirty days. Even Conley stated that the time period between Wallace's first and second positive test results was "on the outside edge of the envelope for a positive test reading." Additionally, we are mindful that the standard of proof necessary to revoke probation is significantly less than proof beyond a reasonable doubt which is necessary for a conviction. Ray v. State, 229 So.2d 579, 581 (Miss.1969); Forshee v. State, 853 So.2d 136, 140(¶ 20) (Miss.Ct.App.2003). A circuit court may revoke probation if it finds the evidence sufficient to convince the court that the probationer more likely than not violated the terms of probation. Forshee, 853 So.2d at 140(¶ 20). The circuit court certainly could have found that, more likely than not, Wallace violated the terms of his probation when he continued to smoke marijuana. What is more, we cannot find that, had McKoin called Conley or a witness who would have testified similar to Conley, there is a sufficient probability that the circuit court would not have found that Wallace, more likely than not, violated the terms of his probation.
¶ 24. As for Wallace's claim that McKoin was ineffective because he did not object to the chain of custody of the urine sample, Wallace's entire argument is that the State did not offer evidence that the MDOC's requirements regarding chain of custody were met. However, Wallace presents no evidence that the chain of custody was improperly handled or somehow insufficient.
¶ 25. Wallace next argues that McKoin was ineffective because he elicited harmful testimony from Stanley during cross-examination. There is a presumption that counsel's actions were strategic. Connell, 691 So.2d at 1007. On cross-examination, McKoin asked Stanley how long marijuana would remain in one's system. Stanley testified that marijuana would remain in a heavy smoker's system approximately twenty-one to thirty days "depending on metabolism, body weight, fat content, things like that." McKoin could have been trying to demonstrate that given Wallace's body weight and fat content, *1033 marijuana would have remained in his system longer than it would have remained in another person's system. Given the presumptions involved, it appears that McKoin was making the only argument he could make under the circumstances.
¶ 26. Next, Wallace argues that McKoin was ineffective because he did not file a timely motion for reconsideration. Wallace's petition for post-conviction relief contained affidavits from his mother and father. By those affidavits, Wallace's parents swore they asked McKoin to file a motion for reconsideration and that McKoin filed it untimely. The record does not contain a motion for reconsideration or an order finding that such a motion was untimely. In any event, assuming McKoin had filed a timely motion for reconsideration, there is no reason to assume that there is a sufficient probability that the circuit court would have reversed itself.
¶ 27. In his brief, Wallace raises two issues that were not included in his petition for post-conviction relief. Wallace claims McKoin was ineffective because he did not attack Stanley's credibility. Wallace also claims McKoin was ineffective because he allowed Shows to testify that Wallace told him he used marijuana once a week until the day he was sentenced. As Wallace did not raise these issues in his petition for post-conviction relief, he is barred from raising them on appeal. Miss.Code Ann. § 99-39-21(1) (Rev.2007); Wortham v. State, 952 So.2d 968, 972(¶ 15) (Miss.Ct.App.2006). See also Howard v. State, 945 So.2d 326, 360(¶ 71) (Miss.2006) (citation omitted) ("A trial judge will not be found in error on a matter not presented to him for decision.").
¶ 28. After careful consideration, we find no merit to Wallace's arguments on appeal. Accordingly, we are bound to affirm the circuit court's decision to deny Wallace's petition for post-conviction relief.
¶ 29. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.